779 F.2d 50
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MICHAEL RAY FRIEND, Petitioner-Appellant,
v.
JOHN D. REES, Warden and Attorney General of
KentuckyRespondents-Appellees.
 84-5865
 United States Court of Appeals, Sixth Circuit.
 10/29/85
 
 AFFIRMED
 W.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 Before: MERRITT and WELLFORD, Circuit Judges; CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner Friend appeals from a judgment of the United States District Court for the Western District of Kentucky denying his application for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254, following his conviction in Kentucky court for the murder of his wife. His conviction was affirmed by the Kentucky Supreme Court on April 20, 1983, and the United States District Court denied Friend's pro se petition for habeas corpus on August 27, 1984. Friend now appeals from denial of his petition.
 
 
 2
 Petitioner was an associate professor at the University of Louisville and his wife, Monika, taught at Shawnee High School in western Louisville. On May 7, 1981, Monika's nude body was found floating in the Ohio River near Shawnee Park about one mile from the high school. The testimony revealed that the cause of her death was strangulation, and she also had suffered a number of blows to the back of her head. Her clothes were found tucked under the trunk of a fallen tree nearby the place her body was discovered.
 
 
 3
 Petitioner and his wife experienced marital troubles prior to May of 1981, and neighbors testified that on the night of May 5, 1981, between 10:15 p.m. and 10:30 p.m., they heard a woman's voice coming from the Friends' apartment, screaming 'Michael, please stop. Damn you, Michael, I can't believe you're doing this.' They identified the woman's voice as that of Monika and then said that they heard slaps followed by 'pounds' and 'thuds.'
 
 
 4
 One of these neighbors had heard similar arguments and testified about fights before emanating from the Friends' residence. This neighbor called the Spouse Abuse Center the next day to report the incident, and it was noticed that for the first time Friend's Ford Fairmont had been backed into its parking space with the trunk facing the apartment. On May 7, at approximately 3:00 a.m., petitioner called for assistance to tow his car out of the mud at the Ohio River's edge, in close proximity to the place where Monika's body was discovered about ten or twelve hours later. (The car was removed from a location about seventy feet above and east of where the body was found.)
 
 
 5
 Forensic pathologist Nichols performed an autopsy on Monika on May 8, 1981. He found abrasions on her back and lacerations on the back part of her scalp caused by a blunt object involving some twenty-one blows. Several of Monika's artificial nails were broken and her hands bruised, the pattern of nail breakage and bruising indicating that Monika was defending herself by placing her hands on the back of her head in his opinion. (A pathologist who testified for the defense was of the opinion that the condition of the nails indicated a counterattack upon her assailant.) The cause of death was strangulation, and Monika's blood alcohol level was found to be .18 percent.
 
 
 6
 The Kentucky State Police Crime Lab serologist Hanka also testified about the type of blood on Monika's blouse and a finding of semen on her blouse and underclothing. Her blood type, however, was that found on her clothing, and indications were that there was no intercourse within a few hours before death.
 
 
 7
 Petitioner reported Monika missing to the Louisville Police Department on the afternoon of May 6, 1981. On May 7, after the body of Monika was identified, petitioner came to the police station and he appeared emotionally upset upon hearing of his wife's death. He pulled out of his wallet a purported note from Monika which he stated she left for him on May 5, 1981, that she was going out with a friend.
 
 
 8
 Petitioner was then voluntarily interviewed by Detective Michael Dossett, given Miranda warnings, and Friend stated that at 7:00 p.m. on May 5, he left the apartment to go to the grocery, and that Monika was then in a bathrobe. He stated that he returned home and found Monika's note about 8:00 p.m. He related that about an hour later he went to some bars, including the 'Red Garter,' and returned home after midnight. On May 6, petitioner told Monika's carpool that she was missing, and called the high school and her friends, but no one knew her whereabouts. He related that he and his wife had been separated and were dating others, but still lived in the same residence. Monika often stayed all night with her dates but usually returned in the morning. Throughout the lengthy interview, however, petitioner did not ask how his wife died or where her body was found.
 
 
 9
 On May 8, 1981, Friend was arrested by Detective Sowers at his apartment. Sowers testified at a suppression hearing that he met petitioner in the parking lot in front of his condominium at 3:15 p.m. on May 8, 1981, then informed him he was under arrest for the murder of his wife Monika, and gave him his Miranda rights in the foyer leading into the condominium. Sowers then testified:
 
 
 10
 Okay. I asked Mr. Friend if the weapon was still in the house and at first Mr. Friend replied, 'yes.' Then he paused and stated, 'No, I threw it in the river with her body.'
 
 
 11
 Petitioner's response came, according to Sowers, almost immediately after he was given his Miranda rights, at the door to his condominium on his way to obtain some medication for his diabetic condition. After making this statement, petitioner asked to go in and sit down and said he did not wish to make any further statements. Sowers testified that petitioner did not then mention wanting to call an attorney. Petitioner and his father, also present, however, contended that appellant asked to call his attorney before answering any questions but that this request was denied. Kentucky Circuit Court Judge Richard A. Revell denied petitioner's motion to suppress the evidence of his statement against his interest. His basis for denial was that the police 'adhered to defendant's request for medication [for petitioner's diabetic condition] and it is difficult to conclude that they would have appeased him on the one hand but denied him the opportunity to call his lawyer if he had so requested.' He also found petitioner to be a highly intelligent individual who acknowledted familiarity with his right to remain silent. The state trial judge found that the evidence indicated that petitioner was advised of his constitutional rights, made the statement following the Miranda warning, and was later permitted to call an attorney when he made his first request after making the disputed statement.
 
 
 12
 Monika dated a man named Goldentul, whose son she taught in high school. Goldentul has Type A blood, but he stated he was at home on the fateful night of May 5, 1981. The petitioner also points out that Goldentul has gray hair and that Dr. Nichols, the pathologist, testified that a gray hair was found on Monika's person. Goldentul himself called the police after he heard of Monika's death. A mutual friend of Monika and Goldentul, Robert Paris, was present when Monika was with Goldentul at a party and testified that she referred to Goldentul as 'Misha', not 'Michael.' Monika and petitioner had also told Paris they were getting a divorce but would remain friends. Another good friend of Monika's testified similarly to Paris.
 
 
 13
 After the quilty verdict based on the above summary of evidence, petitioner's counsel filed a motion for a new trial based on newly discovered evidence. His affidavit alleged that the Assistant Commonwealth's Attorney verbally gave him a list of witnesses on August 18, 1981, including Tina Ann Cobble. In response to his counsel's inquiry about her, petitioner answered that he could not remember any 'Tina' he had met. The Assistant Commonwealth's Attorney then provided a written list of witnesses on which Tina Ann Cobble's name again appeared, along with her address. On September 20, 1981, petitioner's counsel left his card at Cobble's home, but had no contact with her.
 
 
 14
 After learning of the guilty verdict Cobble called petitioner's counsel and stated that she worked at the 'Red Garter' on May 5, 1981, and was then known as Tina Ann Morris. She recalled that she was with petitioner that evening at the bar. Petitioner's counsel then obtained a copy of a police investigatory report of an interview with Cobble the previous May, in which she identified petitioner as having been in the 'Red Garter,' but Cobble could not say the exact day petitioner was in the bar. Friend now claims that the government concealed exculpatory information in this regard, although he, too, had been in contact with her after his arrest. Petitioner also raised in his state appeal the same issues now presented in this appeal; insufficiency of the evidence, withholding of information by the prosecutor, and improper admission in evidence of his inculpatory statement. The district court denied the writ.
 
 
 15
 Even apart from the inculpatory statement that he had thrown the instrument used to beat his wife into the river, the Kentucky Supreme Court took note of other 'substantive evidence supporting appellant's conviction,' including:
 
 
 16
 (1) marital troubles and frequent fights between Friend and the murder victim
 
 
 17
 (2) voice of Monika screaming for 'Michael' to stop, accompanied by 'pounds' and 'Thuds' the night of the murder in the Friends' apartment
 
 
 18
 (3) Friend's presence at the river at 3:00 a.m. 'in close proximity' to the place Monika's body was later found that same day
 
 
 19
 This evidence was also noted by the district court, and we observe further that the Friends' automobile was seen parked the next morning (May 6) at the apartment in an unusual fashion which might well have indicated to the triers of fact something having been moved to the trunk of the car from the apartment after the fight on May 5. Friend had been in the apartment by his own admission on the night of the fight at or near the time neighbors heard the evidence of a violent struggle. The presence of the Friends' car in the river area nearby the location of Monika's body is also significant evidence.
 
 
 20
 We AFFIRM the district court's conclusion that there was sufficient evidence of guilt to submit the case to the jury under Jackson v. Virginia, 443 U.S. 307 (1979) standards even if the 'confession' were not considered. In respect to sufficiency of the evidence, we also affirm that Friend's constitutional rights were not offended by the admission of his incriminating statement immediately after his arrest. We give deference to the findings of the state court which had the first hand opportunity to see and hear the witnesses and make important credibility determinations. In addition, after independent examination of the record there is sufficient evidence to support the finding that Friend was given his Miranda warning before he made the statement that the blunt instrument used to strike his wife was thrown into the river with her body. Friend is educated and knowledgeable about his rights, and there is credible evidence, if believed, to support the further finding that he did not ask for counsel until after he made the damaging answer to Detective Sowers' question. No evidence points to compulsion, nor to any substantial period of Friend's being confined alone with a questioning police officer nor to any doubt about Friend's comprehension of his privilege not to incriminate himself. The addition of this evidence, together with the other previously indicated, is clearly sufficient to establish guilt as charged.
 
 
 21
 Under the facts of this case we also find no violation of Brady, 373 U.S. 83 (1963) principles. The claim that Friend was not made fully aware of Tina Ann Cobble's identity by reason of government concealment is simply not meritorious. Furthermore, the government could not know, based on her statement to them, that her testimony would be exculpatory in view of her uncertainty about dates and time that would have been helpful to Friend's alibi claim. She was surely known to Friend and her version was available to him upon his or his attorney's inquiry.
 
 
 22
 While we have dealt with appellant's contentions on their merits, we are not absolutely sure that he has exhausted his claims, as required, in Kentucky tribunals. The appellee has not raised the exhaustion question, and it appears that he has raised the three contentions we have considered before the Kentucky Supreme Court. The cryptic decision by the latter court that 'appellant's additional allegations of error are without merit' would seem to indicate that the alleged suppression of witness Cobble issue was decided without reference to a procedural deficiency. In any event, we are satisfied that appellant has not carried his burden of proving any constitutional error in his conviction.
 
 
 23
 Accordingly, we affirm the decision of the district court in all respects.